OPINION
{¶ 1} Plaintiff-appellant, Phil Merritt d.b.a. Phil Merritt Construction, appeals a decision of the Fayette County Court of Common Pleas, awarding him $469.50 on his breach of contract claim against defendants-appellees, Trent Anderson and Jannell Anderson. We reverse.
 {¶ 2} On March 25, 2005, Trent Anderson and his wife, Jannell Anderson, entered into a contract with Phil Merritt and his company, Phil Merritt Construction. Under the contract, Merritt agreed to construct a single family residence for the Andersons for $183,900, with the amount to be paid in four equal installments or "draws" of $45,975. Merritt received the first three draws without objection. In October 2005, Merritt told the Andersons that he could not complete the contract without receiving a portion of the final draw. With the Andersons' approval, their lender released an additional $22,987.50 to Merritt.
 {¶ 3} After receiving this partial payment, Merritt worked on the project until late March or early April of 2006, at which time Merritt presented the Andersons with a "Final Draw Evaluation." On April 14, 2006, Merritt tried to obtain a "certificate of occupancy" for the residence but was told by Fayette County Building Inspector Jay Myers that the Andersons had filed a complaint against him, alleging that he failed to place black felt paper under the roof's shingles. Myers told Merritt that a certificate of occupancy would not be issued for the residence until this issue was resolved.
 {¶ 4} However, on April 19, 2006, the Andersons obtained a certificate of occupancy from Fayette County's Chief Building Official, Steve Rivera, who determined that the problem with the roof was insufficient to prevent issuance of a certificate of occupancy. The Andersons moved into the residence shortly thereafter. *Page 3 
 {¶ 5} Sometime after the Andersons moved into the residence, Merritt sought to return to the premises with his construction crew to fix the problem with the roof, but the Andersons refused to allow him to do so. Around this time, the Andersons, through their attorney, sent Merritt a letter, dated April 26, 2006, wherein they advised Merritt that they were terminating the parties' construction contract "based upon your breach of failure to perform [sic]." The letter instructed Merritt not to enter upon their premises "or criminal charges may ensue." Merritt subsequently presented the Andersons with a final bill of $25,932.50, which the Andersons refused to pay.
 {¶ 6} On July 18, 2006, Merritt filed a complaint against the Andersons in the Fayette County Court of Common Pleas, alleging breach of contract, for which he sought compensatory and punitive damages. The Andersons filed a counterclaim, alleging Merritt failed to perform his construction duties in a workmanlike manner.
 {¶ 7} In May 2007, a trial was held over two separate days on the parties' claims. On January 23, 2008, the trial court issued a decision finding that Merritt breached the parties' construction agreement by, among other things, failing to perform in a workmanlike manner. The trial court found that the Andersons were entitled to $15,987 to replace their roof as a result of the lack of black felt paper, and $3,496 to increase the amount of insulation in the attic to the amount required under the parties' contract, for a total damages award of $19,483. The trial court then subtracted this amount from the $19,952.50 that the trial court found Merritt was due on the remaining half of the fourth draw, [1] thereby leaving him with a net judgment of $469.50.[2] *Page 4 
 {¶ 8} Merritt now appeals the trial court's decision and assigns the following as error:
 {¶ 9} "THE TRIAL COURT ERRED AS A MATTER OF LAW TO THE PREJUDICE OF APPELLANT BY AWARDING APPELLEES DAMAGES OF $19,483.00 ON THEIR COUNTERCLAIM AGAINST APPELLANT FOR BREACH OF CONTRACT."
 {¶ 10} Merritt first argues that he was deprived of a "fair disposition" of his case because it took the trial court nearly eight months to issue a decision in this matter. We find this argument unpersuasive.
 {¶ 11} R.C. 2701.02 states in pertinent part:
 {¶ 12} "[W]hen submitted to a court * * * on final trial on the issues joined, a cause begun in a court of record shall be determined and adjudicated within thirty days after such submission."
 {¶ 13} The 30-day time limit in R.C. 2701.02, while binding on the conscience of a trial court, is merely directory and not mandatory, and therefore, a trial court's failure to observe the 30-day time limit does not deprive the court of jurisdiction to rule on the matter. SeeKyes v. Pennsylvania RR. Co. (1952), 158 Ohio St. 362, 367-368, paragraph seven of the syllabus (interpreting G.C. 1685, the predecessor statute to R.C. 2701.02). See, also, Knox v. Knox (1986),26 Ohio App.3d 17, 20 (a party who has submitted his case to the court should not be required to sue the judge in mandamus to force a decision since trial judges should render their decisions in a timely fashion).
 {¶ 14} This court has stated that "based on R.C. 2701.02, [a trial court] should attempt to issue a decision within a reasonable time after submission taking into *Page 5 
consideration its caseload, the nature of the dispute, and the difficulty of the issues." Parker v. Slivinski (June 16, 1986), Madison App. No. CA85-03-008, at p. 2.
 {¶ 15} There is nothing in the record to show that the trial court's delay in deciding this case was intentional, nor is there any indication that Merritt suffered any harm, injury, or prejudice as a result of that delay. Therefore, the delay did not amount to reversible error. See id., and see, generally, Buchholz v. West Chester Dental Group, Butler App. No. CA2007-11-292, 2008-Ohio-5299, ¶ 32 (dentist failed to demonstrate that he suffered any harm, injury, or prejudice as a result of a five-month delay in arbitrator's decision, and therefore, delay was not unreasonable).
 {¶ 16} In his chief argument under this assignment of error, Merritt contends that since the Andersons prevented him from remedying any alleged defect in their residence, as the parties' contract permits him to do, the trial court erred in awarding the Andersons $19,483 on their counterclaim against him.
 {¶ 17} The parties' construction agreement contains a provision allowing Merritt to remedy any defect in the residence upon receiving timely notice thereof. It is undisputed that the Andersons failed to provide Merritt with an opportunity to do so. However, the trial court found that the Andersons were relieved of that contractual duty because Merritt breached the parties' contract by, among other things, failing to perform his construction duties in a workmanlike manner. As a result, the trial court found that the Andersons were justified in unilaterally terminating the parties' agreement. The pivotal issue before us, then, is whether the trial court erred in so finding.
 {¶ 18} Legal issues involving contract interpretation are subject to a de novo standard of review. Taylor Bldg. Corp. of Am. v. Benfield, 117 Ohio St.3d 352, 2008-Ohio-938, ¶ 37. *Page 6 
See, also, Wiltberger v. Davis (1996), 110 Ohio App.3d 46, 51-52. However, when a trial court makes factual findings supporting its legal conclusions regarding a contract, those factual findings must be reviewed with great deference and upheld if some competent, credible evidence exists to support them. See Benfield at ¶ 38; andWiltberger at 52.
 {¶ 19} Applying the foregoing to this case, the trial court's determination that the Andersons were justified in unilaterally terminating the parties' contract is subject to a de novo standard of review. See Benfield. However, any factual findings that the trial court made in support of that determination must be upheld if some competent, credible evidence exists to support them. See Wiltberger.
 {¶ 20} Generally, in the absence of fraud, duress, undue influence, or mistake, a party to a contract cannot rescind, cancel or terminate the contract without the other party's consent. Owens v. Heilmann (Feb. 12, 1996), Butler App. No. CA95-04-081, page 2. In this case, however, the parties' contract contains a paragraph that discusses the Andersons' "power" to terminate the agreement, by giving ten days' notice, if Merritt commits any of the acts specified in that paragraph, including if he becomes insolvent, refuses to pay subcontractors, disregards applicable laws relating to the project, or "otherwise commit[s] asubstantial violation of any provision of this Agreement." (Emphasis added.) The parties' contract also contains a provision stating that Merritt "warrants and guarantees" to the Andersons "that all work will be of good quality and free from faults or defects[.]" Moreover, the common law imposes upon builders the duty to perform in a workmanlike manner. See, e.g., Jarupan v. Hanna, 173 Ohio App.3d 284,2007-Ohio-5081, ¶ 19. *Page 7 
 {¶ 21} The trial court found that Merritt had breached his duty to perform in a workmanlike manner with respect to several substantial areas of the parties' agreement. Specifically, the trial court found that while the contract did not contain a "time is of the essence" clause, Merritt's delay in completing the residence was not caused by factors outside of his control. The trial court also found that Merritt's "failure to complete or repair to conform to the contract after [the] Andersons' written notice of November 26, 2005 justified the de facto termination of the contract by [the] Andersons, later reduced to writing by counsel." The trial court concluded that these facts, taken together, were sufficient to permit the Andersons to unilaterally terminate the parties' contract. We disagree.
 {¶ 22} Initially, the trial court failed to make any finding as to whether the Andersons provided Merritt with the ten days notice required under the provision in the parties' contract relating to the owner's power to terminate the agreement. A review of the evidence indicates that the Andersons failed to give Merritt the requisite ten-day notice of their intention to terminate the agreement. Specifically, the Andersons' termination letter to Merritt was dated April 26, 2006, but Trent Anderson's testimony showed that the Andersons had already moved into the residence by that time.
 {¶ 23} The parties' construction agreement did require Merritt to complete the project within ten months of the date the contract was executed, unless he was unable to complete the project within that time period due to such things as an act of God or other cause beyond his control. This ten-month period expired on January 25, 2006. However, Merritt did not complete construction on the residence until mid-April 2006. Therefore, there was about a two-and-a-half to three-month delay in his performance *Page 8 
under the contract.
 {¶ 24} The Andersons argued in the trial court that because the parties' construction agreement contained a provision requiring that their residence be completed in ten months, this provision constituted a "time is of the essence" clause. However, the time of performance specified in a contract is generally not of the essence. Brown v.Brown (1993), 90 Ohio App.3d 781, 784. The parties can alter this rule by including an express stipulation in the contract, or the nature of the contract itself or the circumstances under which it was negotiated can show that the parties intended for time to be of the essence. Id.
 {¶ 25} In this case, the parties' contract did not contain an express term making time of performance as being of the essence, and neither the trial court nor the Andersons have identified any provision in the contract or circumstance of this case that would render time of performance as being of the essence with respect to the parties' contract. While the Andersons may have been entitled to compensation for any damages they sustained arising from the delay in Merritt's performance, the delay, standing alone, was insufficient to justify termination of the parties' contract.
 {¶ 26} The trial court also cited Merritt's alleged failure "to complete or repair to conform to the contract after [the] Andersons' written notice of November 26, 2005" in support of its finding that the Andersons were justified in terminating the parties' contract. The "written notice of November 26, 2005" that the trial court referred to in its decision involved a list of alleged defects that the Andersons left at the premises in November 2005. The list contained 21 items, ranging from the type of heating and air conditioning unit to be installed, to a three-way switch in the dining room that did not *Page 9 
work properly.
 {¶ 27} The evidence showed that Merritt corrected most of these defects. The trial court did not make any specific findings as to which of the defects Merritt failed to correct, but presumably, the trial court accepted Trent Anderson's testimony that Merritt failed to correct the problems related to the insulation in the attic, the ductwork, and a number of the residence's interior doors. Trent also stated that he himself corrected many of the problems on the list and estimated that he performed about $3,900 worth of work in doing so.
 {¶ 28} The items mentioned in the list included problems with the insulation and the windows. The trial court rejected the Andersons' request for $22,625 to replace the windows, finding that Merritt substantially complied with the contract terms regarding the windows because the windows Merritt installed were "serviceable" and the Andersons had agreed to them. The list did not mention the problems with the roof.
 {¶ 29} The trial court awarded the Andersons $3,496 regarding the insulation in the attic, and there was evidence to show that the parties had agreed to put 12 inches of insulation in the attic, but in some places, there was only eight to ten inches of insulation. However, since the trial court awarded damages only with respect to the insulation, the defects set forth in the November 26, 2005 list did not amount to a substantial violation of the parties' contract.
 {¶ 30} As to the roof, there was evidence that Merritt failed to place black felt paper on the roof before placing shingles on it. While Merritt's failure to place black felt paper under the shingles is troubling, the evidence shows that the Andersons learned of the roof problem in June or July of 2005, but did not notify Merritt of their decision to *Page 10 
terminate the parties' contract until April 26, 2006, at which time their residence was nearly completed and Merritt was attempting to obtain a certificate of occupancy for the Andersons, which they themselves had already obtained.
 {¶ 31} Furthermore, the parties' contract provided the Andersons with a remedy as to these matters, to wit: once the residence was complete, the Andersons could provide Merritt with a written list or "punch list" of all alleged defects in their residence, and once he received the list, Merritt would have been obligated to remedy, to the Andersons' satisfaction, any legitimate defect pointed out to him. If Merritt had failed to do so, the Andersons would have been free to bring an action against him for damages. However, the Andersons never availed themselves of this remedy, choosing, instead, to unilaterally terminate the contract. By doing so, they, rather than Merritt, breached the parties' contract.
 {¶ 32} Merritt's sole assignment of error is sustained to the extent indicated.
 {¶ 33} The trial court's judgment is reversed. Judgment is hereby entered in favor of Merritt as to his claim that the Andersons breached the parties' contract by refusing to allow him to correct any alleged defect on the premises before bringing suit against him. This cause is remanded for a determination of Merritt's damages for the Andersons' breach of contract in accordance with the law and consistent with this Opinion.
WALSH, P.J., and YOUNG, J., concur.
[1] The trial court arrived at the $19,952.50 amount by taking the $22,987.50 of the remaining half of the fourth draw, adding $6,200 for "extras" that the Andersons had requested from Merritt, and then subtracting $9,235 for "allowances" that the Andersons had received from Merritt.
[2] The trial court actually stated that Merritt was left with a net judgment of $469, but it appears the trial court meant to find that Merritt was left with a net judgment of $469.50, as $19,483 subtracted from $19,952.50 equals $469.50. *Page 1