[Cite as *Patrick v. Dixie Imports, Inc.*, 2017-Ohio-9093.]

IN THE COURT OF APPEALS

TWELFTH APPELLATE DISTRICT OF OHIO

BUTLER COUNTY

| | | |
|---|---|---|
| ASHLEY PATRICK, | : | |
| Plaintiff-Appellee, | : | CASE NO. CA2017-05-063 |
| | : | O P I N I O N |
| - vs - | | 12/18/2017 |
| | : | |
| DIXIE IMPORTS, INC., | : | |
| Defendant-Appellant. | : | |

CIVIL APPEAL FROM BUTLER COUNTY COURT OF COMMON PLEAS
Case No. CV2016-10-2255

Elizabeth A. Wells, Ronald L. Burdge, Scarlett M. Steuart, 8250 Washington Village Drive, Dayton, Ohio 45458, for plaintiff-appellee

Richard L. Hurchanik, Timothy R. Evans, 110 North Third Street, Hamilton, Ohio 45011, for defendant-appellant

**HENDRICKSON, P.J.**

{¶ 1} Defendant-appellant, Dixie Imports, Inc., appeals from a decision of the Butler County Court of Common Pleas denying its motion to stay proceedings pending arbitration in a suit brought by plaintiff-appellee, Ashley Patrick. For the reasons set forth below, we affirm the decision of the trial court.

{¶ 2} On October 17, 2016, Patrick filed a complaint against Dixie Imports, alleging

violations of the Ohio Consumer Sales Practices Act, violation of the Motor Vehicle Sales Rule, and violations of the FTC Used Car Window Sticker Rule. According to the allegations set forth in Patrick's complaint, Patrick entered into a contract with Dixie Imports on March 16, 2016, to purchase a used 2008 BMW X5 motor vehicle. At the time of purchase, Patrick signed a Buyer's Guide, a Retail Purchase Agreement (Buyers Order), and Retail Installment Sale Contract.

{¶ 3} The Retail Purchase Agreement set forth that the vehicle was being sold "as-is" and that Dixie Imports "disclaim[ed] all warranties, express and implied, including any implied warranties of merchantability and fitness for a particular purpose." The Retail Purchase Agreement also contained a box that provided "IF MARKED, PLEASE SEE ATTACHED ARBITRATION AGREEMENT – FEX-f44 Formerly 818199-14462." This box was not marked. Finally, the Retail Purchase Agreement contained an integration clause, which provided:

> The front and back of this Agreement and any documents which are part of this transaction or incorporated herein comprise the entire agreement affecting this Retail Purchase Agreement (Buyers Order) and no other agreement or understanding of any nature concerning the same has been made or entered into, or will be recognized. I have read the terms and conditions of this Agreement, including the terms and conditions that appear on the reverse side, and agree to them as if they were printed above my signature. I further acknowledge receipt of a copy of this Agreement.

The Retail Purchase Agreement was signed by Patrick and an authorized representative of Dixie Imports.

{¶ 4} Patrick also signed a five-page Retail Installment Sales Contract, which provided that Patrick was purchasing the motor vehicle on credit. The Retail Installment Sales Contract included an arbitration clause on page five of the agreement, which stated:

> Any claim or dispute, whether in contract, tort, statute or otherwise (including the interpretation and scope of this

> Arbitration Clause, and the arbitrability of the claim or dispute), between you and us or our employees, agents, successors or assigns, which arises out of or relates to your credit application, purchase or condition of this vehicle, this contract or any resulting transaction or relationship (including any such relationship with third parties who do not sign this contract) shall, at your or our election, be resolved by neutral, binding arbitration and not by a court action.

The Retail Installment Contract also contained a provision informing Patrick that Dixie Imports, as the seller, "may assign this contract and retain its right to receive a part of the Finance Charge" associated with the financing of the vehicle. The contract then provided that Dixie Imports assigned its interest in the contract to G.O.L.F. "without or with limited recourse."

{¶ 5} Patrick initialed all five pages of the Retail Installment Sales Contract and signed the contract on page four, underneath the following provision:

> You agree to the terms of this contract. You confirm that before you signed this contract, we gave it to you, and you were free to take it and review it. You acknowledge that you have read all pages of this contract, including the arbitration clause on page 5, before signing below. You confirm that you received a completely filled-in copy when you signed it.

{¶ 6} According to the allegations set forth in Patrick's complaint, after taking possession of the vehicle, Patrick discovered an undisclosed open safety recall existed for the vehicle and that the vehicle had irreparable internal engine damage. Patrick alleged the internal engine damage had been caused by Dixie Imports when it changed the vehicle's oil and filter in a shoddy and unworkmanlike manner.

{¶ 7} Patrick's complaint was served on Dixie Imports by certified mail on October 24, 2016. On December 9, 2016, counsel for Dixie Imports filed an appearance and a motion for a more definite statement in accordance with Civ.R. 12(E). The motion was granted in part and denied in part by the trial court on December 21, 2016. Patrick was instructed to attach all of the contract documents identified in her allegations to her

complaint, but the court denied Dixie Imports' request to have Patrick specifically identify the administrative code provisions under which her claims fell. The court stated that Dixie Imports could "avail itself of available discovery rules to advance its defense" against the lawsuit.

{¶ 8} On January 9, 2017, Patrick filed her amended complaint. Thereafter, on January 13, 2017, Dixie Imports filed a notice to depose Patrick. On January 18, 2017, Dixie Imports filed a second memorandum in support of its motion for a more definite statement, again arguing that the administrative code provisions should be identified in Patrick's complaint, as that was the "better practice."

{¶ 9} On February 16, 2017, Dixie Imports attended and participated in a status conference before the court. A few days later, on February 21, 2017, Dixie Imports filed its answer with a jury demand. Dixie Imports' answer denied the allegations set forth in the complaint, and asserted as an affirmative defense that Patrick's claims were subject to an arbitration agreement. On February 27, 2017, Dixie Imports simultaneously filed another notice to depose Patrick and a "Motion to Stay Case Until Arbitration [is] Completed." On March 1, 2017, subsequent to filing its motion to stay proceedings pending arbitration, Dixie Imports filed an amended notice to depose Patrick.

{¶ 10} On May 1, 2017, the trial court denied Dixie Imports' motion to stay proceedings pending arbitration of the dispute. The court examined the language set forth in the Retail Purchase Agreement and the Retail Installment Contract and determined that the Retail Purchase Agreement did not provide for arbitration, as the arbitration box was not marked. The court further determined that Patrick's initials on the arbitration-clause page of the Retail Installment Contract did not necessarily indicate Patrick's assent to arbitration. Rather, the court held, it may have only signified that Patrick had read that page. Alternatively, the court determined that even if Patrick's initials on the arbitration-clause page

of the Retail Installment Contract were construed as an agreement to arbitrate, an ambiguity existed as there was no indication in the Retail Purchase Agreement that the parties intended to agree to arbitration, given the unmarked box. The court concluded that this ambiguity had to be construed in Patrick's favor, as Dixie Imports had drafted the documents, and it held that there was no agreement to arbitrate.

{¶ 11} The trial court further held that even if there was a contractual agreement to arbitrate the dispute, Dixie Imports had waived its right to arbitration based on the four-month delay that occurred between Patrick's filing of the complaint and Dixie Imports' demand for arbitration. The trial court noted that during this four-month delay, Dixie Imports "acted inconsistently with * * * the right to arbitrate" by filing responsive pleadings, seeking discovery, and otherwise participating in the litigation.

{¶ 12} Dixie Imports timely appealed the trial court's denial of its motion to stay proceedings pending arbitration, raising the following as its sole assignment of error:

{¶ 13} THE COURT ERRED IN FAILING TO GRANT THE DEFENDANT'S MOTION TO STAY THE CASE PENDING THE COMPLETION OF ARBITRATION.

{¶ 14} In its assignment of error, Dixie Imports contends the trial court erred in denying its motion to stay the case pending arbitration as (1) the Retail Installment Sales Contract was unambiguous and called for arbitration, (2) it did not waive its right to arbitrate, and (3) any question of arbitrability should have been decided by an arbitrator, not the trial court.

**Ambiguity**

{¶ 15} Ohio has a strong public policy favoring arbitration, as expressed in the Ohio Arbitration Act codified in R.C. Chapter 2711. *Taylor v. Ernst & Young, L.L.P.*, 130 Ohio St.3d 411, 2011-Ohio-5262, ¶ 18. Pursuant to R.C. 2711.02(B),

> [i]f any action is brought upon any issue referable to arbitration *under an agreement in writing for arbitration*, the court in which the action is pending, upon being satisfied that the issue involved

in the action is referable to arbitration under an agreement in writing for arbitration, shall on application of one of the parties stay the trial of the action until the arbitration of the issue has been had in accordance with the agreement, *provided the applicant for the stay is not in default in proceeding with arbitration.*

(Emphasis added.) "An arbitration clause in a contract is generally viewed as an expression that the parties agree to arbitrate disagreements within the scope of the arbitration clause, and, with limited exceptions, an arbitration clause is to be upheld just as any other provision in a contract should be respected." *Williams v. Aetna Fin. Co.*, 83 Ohio St.3d 464, 471 (1998).

{¶ 16} The primary role of the court in reviewing a contract is to ascertain and give effect to the intent of the parties. *Hamilton Ins. Services. v. Nationwide Ins. Co.*, 86 Ohio St.3d 270, 273 (1999). "A contract that is, by its terms, clear and unambiguous requires no real interpretation or construction and will be given the effect called for by the plain language of the contract." *Cooper v. Chateau Estate Homes*, 12th Dist. Warren No. CA2010-07-061, 2010-Ohio-5186, ¶ 12. A contract is ambiguous, however, if its provisions are susceptible to two or more reasonable interpretations. *Id.* Whether a contract's terms are clear or ambiguous is a question of law for the court. *Id.*, citing *Westfield Ins. Co. v. Huls Am.*, 128 Ohio App.3d 270, 291 (10th Dist.1998). Thus, when reviewing issues of contract interpretation, an appellate court applies a de novo standard of review. *Merritt v. Anderson*, 12th Dist. Fayette No. CA2008-04-010, 2009-Ohio-1730, ¶ 18.

{¶ 17} Contrary to the trial court's determination, we conclude that the Retail Installment Contract signed by Patrick and Dixie Imports set forth an unambiguous agreement to arbitrate "[a]ny claim or dispute, whether in contract, tort, statute or otherwise * * * *which arises out of or relates to your * * * purchase or condition of this vehicle*, this contract or any resulting transaction or relationship." (Emphasis added.) Not only did Patrick

acknowledge that she had received page five of the Retail Installment Contract containing the arbitration clause when she initialed the page, but she signed page four of the agreement, which specifically stated:

> *You agree to the terms of this contract.* You confirm that before you signed this contract, we gave it to you, and you were free to take it and review it. *You acknowledge that you have read all pages of this contract, including the arbitration clause on page 5, before signing below.* You confirm that you received a completely filled-in copy when you signed it.

(Emphasis added.)

{¶ 18} The fact that the Retail Purchase Agreement contains an "unmarked" box referencing an unattached arbitration agreement (FEX-f44 Formerly 818199-14462) does not create an ambiguity. Rather, by not marking the box for an arbitration agreement and not attaching form "FEX-f44 Formerly 818199-14462," the Retail Purchase Agreement's express terms do not contain an agreement to arbitrate. In contrast, the express terms of the Retail Installment Contract, which was part of the transaction to purchase the 2008 BMW X5, sets forth the parties' intent to arbitrate any dispute arising from the purchase or condition of the vehicle.[1] We therefore conclude that the trial court erred when it determined that the arbitration clause did not apply to the parties' transaction.

### Waiver and Arbitrability

{¶ 19} However, although we find that the parties had entered into an unambiguous agreement to arbitrate, we find no prejudicial error in the trial court's denial of Dixie Imports' motion to stay the case pending arbitration as the record supports the trial court's determination that Dixie Imports waived its right to arbitration by participating in the litigation in a manner inconsistent with its right to arbitrate.

---

1 The Retail Installment Contract was integrated into the transaction to purchase the 2008 BMW X5 pursuant to the terms of the Retail Purchase Agreement, which stated that "[t]he front and back of this Agreement *and any*

**{¶ 20}** A trial court's determination that the right to arbitrate has been waived is reviewed on appeal under an abuse-of-discretion standard of review. *Georgetowne Condominium Owners Assn. v. Georgetowne Ltd. Partnership*, 12th Dist. Warren No. CA2002-02-010, 2002-Ohio-6683, ¶ 6. An abuse of discretion is more than an error of law or judgment; it implies that the trial court acted unreasonably, arbitrarily, or unconscionably. *Blakemore v. Blakemore*, 5 Ohio St.3d 217, 219 (1983). "When applying the abuse-of-discretion standard, a reviewing court may not substitute its judgment for that of the trial court." *Georgetowne* at ¶ 6, citing *Berk v. Matthews*, 53 Ohio St.3d 161, 169 (1990).

**{¶ 21}** Either party to a contract may waive the right to arbitrate. *Georgetowne* at ¶ 7. A plaintiff may waive its right to arbitration by filing suit. *Harsco Corp. v. Crane Carrier Co.*, 122 Ohio App.3d 406, 412 (3d Dist.1997). "When the opposite party is confronted with a filed lawsuit, the right to arbitrate can be saved by seeking enforcement of the arbitration clause by application to stay the legal proceedings pending the arbitration." *Georgetowne* at ¶ 7, citing R.C. 2711.02. The "[f]ailure to move for a stay, coupled with responsive pleadings, will constitute a defendant's waiver." *Harsco Corp.* at 412, quoting *Mills v. Jaguar-Cleveland Motors, Inc.*, 69 Ohio App.2d 111, 113 (8th Dist.1980). Further, an arbitration provision may be waived by a defendant's express words or by necessary implication. *Georgetowne* at ¶ 12.

**{¶ 22}** To prove waiver, the complainant must demonstrate, based on the totality of the circumstances, that the defending party (1) knew of an existing right to arbitration and (2) acted inconsistently with that right. *Id.* at ¶ 11, citing *Harsco Corp.* at 413-414; *Hilton v. Mill Rd. Constr. II, Ltd.*, 1st Dist. Hamilton No. C-030200, 2003-Ohio-7107, ¶ 7. "There are no talismanic formulas for determining the existence of an implicit waiver, and no one factor can

---

*documents which are part of this transaction* or incorporated herein comprise the entire agreement affecting the Retail Purchase Agreement (Buyers Order) * * *." (Emphasis added.)

be isolated or singled out to achieve controlling weight." *Georgetowne*, 2002-Ohio-6683 at ¶ 12. "Instead, courts often must undertake a case-by-case review of all relevant facts and circumstances to examine the nature and extent of a particular party's participation in the litigation to determine whether it should be held to prevent the assertion of a right to arbitration." *Atkinson v. Dick Masheter Leasing II, Inc.*, 10th Dist. Franklin No. 01AP-1016, 2002-Ohio-4299, ¶ 21. In determining whether a defendant acted inconsistently with the right to arbitrate, a court may consider the following circumstances: (1) whether there were any delays in the demand for arbitration; (2) the extent of the requesting party's participation in the litigation prior to filing its motion to stay the judicial proceeding, including a determination of the status of discovery, dispositive motions, and the trial date; (3) whether the requesting party invoked the jurisdiction of the court by filing a counterclaim or third-party claim without asking for a stay of the proceedings; and (4) whether the non-requesting party has been prejudiced by the requesting party's inconsistent acts. *Georgetowne* at ¶ 13.

{¶ 23} The trial court determined Dixie Imports was aware of the right to arbitrate the dispute as the arbitration clause was contained within the contract documents prepared and used by Dixie Imports. The court further determined that Dixie Imports had acted inconsistently with its right to arbitrate as it did not assert its right until four months after the filing of the complaint. In between the filing of Patrick's complaint and Dixie Imports' motion to stay pending arbitration, Dixie Imports had filed a motion for a more definite statement, initiated discovery by filing a notice of deposition, filed a second memorandum supporting its motion for a more definite statement, attended a status conference, filed an answer with a jury demand, and filed a second notice of deposition. Then, after filing its motion to stay the case pending arbitration, Dixie Imports filed an amended notice to depose Patrick. The trial court took issue with Dixie Imports' discovery actions, stating:

> [Dixie Imports'] initial Notice of Deposition was not simply

responding to requests from [Patrick], it was an assertion of the discovery process by [Dixie Imports'] own hand. The amended notice is even further removed from any action consistent with an attempt to arbitrate: on the same day [Dixie Imports] sought to stay the case for arbitration it issued a directive for [Patrick] to appear at his [sic] office for deposition by mailing an Amended Notice of Deposition to [Patrick's] counsel * * *. [Dixie Imports] went even further still, in that although that Amended Notice of Deposition was mailed to counsel on February 27, 2017, [Dixie Imports] filed with the Clerk of Courts a *different* Amended Notice of Deposition on March 1, 2017 (changing the time from 1:00 p.m. in the February 27 notice to 11 a.m. in the March 1 notice) and mailed that amendment to counsel as well on the same date, pursuant to the Certification of Service. So [Dixie Imports] even after attempting to assert arbitration rights on February 27, 2017 continued to push forward with the discovery process in this Court by filing a Notice of Deposition two days later.

(Emphasis sic.)

{¶ 24} In support of its argument that participating in discovery and waiting four months after the filing of the complaint to seek arbitration does not amount to a waiver of the right to arbitrate, Dixie Imports cites to a number of cases in which appellate courts have found error in the trial court's denial of a motion to stay pending arbitration. *See, e.g., Harsco Corp.*, 122 Ohio App.3d at 416; *Glenmoore Builders v. Kennedy*, 11th Dist. Portage No. 2001-P-0007, 2001 Ohio App. LEXIS 5449 (Dec. 7, 2001). We note that we have reviewed the case law cited by both parties on the issue of waiver and, after considering the totality of the circumstances in the present case, conclude that the trial court did not abuse its discretion in finding that Dixie Imports had waived its right to arbitration. The trial court's decision was not arbitrary, unreasonable, or unconscionable. While a four-month delay in asserting one's right to arbitration is not exceedingly long, this delay combined with Dixie Imports' knowledge of the arbitration clause and its participation in the litigation process demonstrates a waiver of the right to arbitrate. *See, e.g., Land v. J.D. Byrider, Inc.*, 12th Dist. Butler No. CA2006-02-038, 2007-Ohio-1222. The resolution of Patrick's claims was delayed by Dixie Imports' actions, and Patrick incurred attorney fees in responding to the various

motions filed by Dixie Imports and by participating in the status conference before the court – actions which would not have been necessary had Dixie Imports timely moved to stay proceedings pending arbitration.

{¶ 25} Accordingly, for the reasons stated above, we find no error in the trial court's determination that Dixie Imports waived the right to arbitration by participating in the litigation in a manner inconsistent with its right to arbitrate. We further find, contrary to Dixie Imports' arguments, that this waiver precludes an arbitrator from deciding "any claim or dispute, including the interpretation and scope of the arbitration clause." The right to have an arbitrator determine the arbitrability was likewise waived by Dixie Imports' delay in asserting its right to arbitration.

{¶ 26} Dixie Imports' sole assignment of error is, therefore, overruled.

{¶ 27} Judgment affirmed.

RINGLAND and M. POWELL, JJ., concur.